**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

OSCAR F. SCULL,

        Plaintiff,

vs.                                      No. CIV 11-0207 JB/RHS

MANAGEMENT & TRAINING CORPORATION,
and PNA OF TEXAS I, LTD.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant PNA of Texas I, LTD.'s Partially

Opposed Motion to Extend Deadlines in Scheduling Order, filed January 18, 2012 (Doc.

50)("Motion to Extend").  The Court held a hearing on February 9, 2012.  The primary issues are:

(i) whether the Court should extend deadlines in the Amended Scheduling Order, filed November

14, 2011 (Doc. 39), for Defendant PNA of Texas I, LTD.'s ("PNA"); and (ii) whether the Court

should extend Plaintiff Oscar F. Scull's deadlines to identify experts and produce expert reports

against PNA and Defendant Management and Training Corporation ("MTC").  The Court will grant

the Motion to Extend.  Because none of the parties oppose extending PNA's deadlines, the Court

will grant PNA's request to extend its deadlines.  The Court will extend Scull's deadline to identify

experts and to produce expert reports only with respect to PNA.  Any new expert witnesses that

Scull identifies will not be permitted to testify against MTC.

**PROCEDURAL BACKGROUND**

On January 11, 2011, Scull filed a complaint in the Third Judicial District Court, County of

Otero, State of New Mexico.  <u>See</u> Plaintiffs' [sic] Original Complaint (dated January 11, 2011), filed

March 8, 2011 (Doc. 1-1)("Complaint").  On March 8, 2011, MTC removed the action to the United States District Court for the District of New Mexico, pursuant to 28 U.S.C. §§ 1441 and 1446.  See Defendant's Notice of Removal at 1, filed March 8, 2011 (Doc. 1).  The Complaint alleges that, while Scull was a detainee at MTC's facility, the Otero County Processing Center in New Mexico, he injured his arm when he slipped and fell.  See Complaint ¶ 3 at 1.  Scull alleges negligence, civil rights violations, and premises liability claims against MTC.  See Complaint ¶¶ 12-15, at 2-5.  The Court entered the Initial Scheduling Order on March 23, 2011.  See Initial Scheduling Order, filed March 23, 2011 (Doc. 6).  On April 28, 2011, the Court entered a Scheduling Order.  See Doc. 12.  On November 1, 2011, Scull filed an amended complaint naming PNA as a defendant and asserting three counts of negligence against it.  See Plaintiff's First Amended Complaint ¶¶ 13-23, at 3-7, filed November 1, 2011 (Doc. 36)("Amended Complaint").  On November 14, 2011, the Court issued the Amended Scheduling Order.  See Doc. 39.  The Amended Scheduling Order set February 29, 2012 as the termination date for discovery and set Scull's deadline to disclose expert witnesses as January 3, 2012.  See Amended Scheduling Order at 1.  The Amended Scheduling Order stated that all other parties shall identify in writing any expert witnesses they intend to use at trial and provide expert reports no later than January 30, 2012.  See Amended Scheduling Order at 2.

On December 5, 2011, PNA filed a Waiver of Service of Summons stating that PNA had received Scull's request to waive service on December 2, 2011, and acknowledging that PNA had sixty days from December 2, 2011 in which to file an answer.  See Waiver of Service of Summons 2, filed December 5, 2011 (Doc. 40)("Waiver of Service").  On January 11, 2012, PNA filed its answer to Scull's Amended Complaint.  See Defendant PNA of New Mexico, PC's (Improperly Designated as PNA of Texas I, LTD.) Answer to Plaintiff's First Amended Complaint, filed January 11, 2012 (Doc. 48)("Answer").  PNA filed its Motion to Extend on January 18, 2012.  See Motion

to Extend at 1.  The Motion to Extend requests that the Court extend the deadlines in the Amended

Scheduling Order as follows:

1.   Defendant's deadline to disclose expert witnesses from January 30, 2012 to April 30, 2012;

2.   Discovery deadline from February 29, 2012 to May 29, 2012;

3.   Motions relating to discovery from March 20, 2012 to June 20, 2012;

4.   Deadline for Pre-trial motions, other than discovery from March 30, 2012 to June 29, 2012;

5.   Motions Hearing currently scheduled for May 9, 2012 to be rescheduled by the Court;

6.   Deadline for Parties' list of all fact witnesses from May 10, 2012 to August 10, 2012;

7.   Deadline for Plaintiff to forward Pretrial Order to Defendants from May 22, 2012 to August 22, 2012;

8.   Deadline for Defendant to forward Pretrial Order to Court from May 29, 2012 to August 29, 2012;

9.   The Pretrial Conference currently scheduled for May 30, 2012 will be rescheduled by the Court;

10.   Jury Selection/Trial will be reset by the Court for some time after September 1, 2012.

Motion to Extend at 2-3.  The Motion to Extend asserts that Scull only recently added PNA as a

defendant in the lawsuit, that PNA just filed an Answer to Scull's Amended Complaint, and that

PNA has not yet had the opportunity to participate in discovery.  See Motion to Extend at 2.  The

Motion to Extend also represents that MTC concurred in PNA's Motion to Extend, but that Scull

opposes the Motion to Extend to the extent that it does not include an extension of Scull's January

3, 2012, deadline to identify experts and produce expert reports.  See Motion to Extend at 2.

On February 1, 2012, Scull filed his response to PNA's Motion to Extend.  See Plaintiff's

Response to the Partially Opposed Motion to Extend Deadlines in Scheduling Order, filed February 1, 2012 (Doc. 54)("Response"). Scull asserts that he does not oppose PNA's request for deadline extensions but represents that he opposes the Court extending PNA's deadlines without simultaneously extending Scull's deadline to identify new experts and to produce expert reports. See Response ¶ 2, at 1. Scull argues that no depositions have been taken, because MTC and Scull agreed to postpone discovery until PNA entered the case, and that PNA did not file its Answer until Scull's deadline had passed. See Response ¶¶ 4-7, at 1-2.

On February 9, 2012, the Court issued a memorandum and order granting Scull leave to file his Amended Complaint. See Memorandum Opinion and Order, filed February 9, 2011 (Doc. 58)("MOO"). The Court permitted Scull to amend his Complaint subject to the parties' previously agreed-upon changes to clarify which counts pertained to which defendant. See MOO at 1-3.

Also on February 9, 2012, the Court held a hearing on PNA's Motion to Extend. The Court stated that it understood that there was no disagreement on extending the Amended Scheduling Order deadlines for PNA, but that PNA opposed extending Scull's deadline's to identify expert witnesses. See Federal Digital Tape Recorder at 10:00:42-10:01:18 (February 9, 2012)(Court)("FTR"). The Court stated that Scull would like the Court to extend his deadline to name expert witnesses, which passed on January 3, 2012. See FTR at 10:01:24-10:01:34 (Court). PNA argued that Scull's deadline to disclose expert witnesses had already passed without any action from Scull. See FTR at 10:02:55-10:03:09 (Padilla). PNA stated that it was served via a waiver of service in early December 2011, and filed its Answer in January, after Scull's deadline to disclose expert witnesses had passed. See FTR at 10:03:27-10:04:02 (Padilla). PNA admitted that, because PNA only recently filed its Answer, Scull may still be in the process of evaluating the need for an expert. See FTR at 10:04:19-10:04:33 (Padilla).

-4-

MTC provided background on its operation of the Otero County Processing Center.  See FTR at 10:04:46-10:05:14 (Wihl).  MTC explained that it is the company that operates the Otero County Processing Center.  See FTR at 10:04:49-10:04:59 (Wihl).  MTC is under contract with the County of Otero, which in turn is under contract with United States Immigration and Customs Enforcement.  See FTR at 10:04:59-10:05:14 (Wihl).  MTC asserted that the allegations against PNA in the Amended Complaint are medical care claims.  See FTR at 10:05:17-10:05:32 (Wihl).  MTC further asserted that Scull's claims against MTC are medical care and premises liability claims.  See FTR at 10:05:32-10:05:58 (Wihl).  MTC argued that Scull never named any experts -- other than treating physicians -- before Scull's deadline to disclose experts.  See FTR at 10:06:00-10:06:17 (Wihl).  MTC also contended that Scull did not file an expert report pursuant to rule 26 of the Federal Rules of Civil Procedure before Scull's deadline to disclose expert witnesses passed.  See FTR at 10:06:18-10:06:27 (Wihl).  MTC explained that it understood the Court's proposed solution to mean that the Court would extend Scull's deadline to name expert witnesses only with respect to PNA.  See FTR at 10:06:32-10:07:08 (Wihl).  MTC asserted that this solution was acceptable.  See FTR at 10:07:09-10:07:12 (Wihl).  MTC argued, however, that, if the Court grants Scull an extension to name experts against MTC, then the Court should permit MTC to name a rebuttal expert.  See FTR at 10:07:15-10:07:44 (Wihl).

The Court asked if Scull's claim against MTC was a medical malpractice claim.  See FTR at 10:07:47-10:07:57 (Court).  MTC answered that the medical malpractice claim is against both MTC and PNA.  See FTR at 10:07:58-10:08:07 (Wihl).  MTC clarified that it does not render medical care to detainees or employ any medical employees, because it contracts all medical care to PNA.  See FTR at 10:08:08-10:08:43 (Wihl).  MTC asserted that, because MTC has a contract with the County of Otero and is the facility's operator, it could be argued that MTC is responsible

for the facility, including medical care.  <u>See</u> FTR at 10:09:05-10:09:20 (Wihl).  MTC argued that it employs only detention officers.  <u>See</u> FTR at 10:09:32-10:09:47(Wihl).

The Court expressed concern that, if the Court extends Scull's deadline to retain expert witnesses against PNA, it would be difficult to instruct jurors to consider expert testimony only as to PNA and not to use the testimony to determine MTC's liability.  <u>See</u> FTR at 10:09:47-10:10:43 (Court).  MTC emphasized that PNA is not MTC's employee, but is an independent contractor. <u>See</u> FTR at 10:11:05-10:11:13 (Wihl).  The Court asked whether the best way to protect MTC's interest would be to grant Scull a deadline extension and to allow MTC to name rebuttal witnesses. <u>See</u> FTR at 10:11:15-!0:11:44 (Court).  MTC characterized that option as a fallback solution, and argued that there was potential for jury confusion because PNA and MTC may use the same expert witnesses.  <u>See</u> FTR at 10:11:45-10:12:24 (Wihl).  The Court stated that it appeared that PNA will be mainly defending against the medical malpractice claim, because MTC had no professional duty to provide care.  <u>See</u> FTR at 10:12:25-10:12:48 (Court).

Scull asserted that he and MTC had agreed to wait to hold depositions until PNA entered the case.  <u>See</u> FTR at 10:14:32-10:14:49 (Quintero).  MTC confirmed that Scull and MTC made this agreement.  <u>See</u> FTR at 10:19:32-10:19:52 (Wihl).  Scull argued that now was his first opportunity to depose any witnesses in the case.  <u>See</u> FTR at 10:14:51-10:15:03 (Quintero).  Scull asserted that he was unsure if his denial of medical care was because of PNA's or MTC's failure to get proper medical care providers.  <u>See</u> FTR at 10:15:03-10:15:24 (Quintero).  Scull further argued that MTC is ultimately responsible for the entire facility, so if PNA provided care but MTC was supposed to transfer him to get that care, MTC would be liable.  <u>See</u> FTR at 10:15:28-10:15:41 (Quintero).  Scull contended that the Court should extend all parties' deadlines, because they are only now deposing the first witness -- the warden of the facility -- and that such an extension would

not prejudice the parties.  <u>See</u> FTR at 10:15:43-10:15:54 (Quintero).

      Scull asserted that he failed to meet the January 3, 2012, deadline, because the parties had engaged in little discovery and because he was waiting for PNA to file an answer.  <u>See</u> FTR at 10:16:28-10:16:34 (Quintero).  The Court asked Scull why he did not request to extend the deadline earlier.  <u>See</u> FTR at 10:16:36-10:16:44 (Court).  Scull responded that he was not sure if he would hire any experts, because he did not know for what duties PNA and MTC are each responsible.  <u>See</u> FTR at 10:16:44-10:17:03 (Quintero).  Scull argued that, originally, he did not believe MTC was responsible for transporting detainees to medical providers but stated that he now believes otherwise.  <u>See</u> FTR at 10:17:03-10:17:16 (Quintero).  Scull contended that an expert named for PNA may also be applicable to MTC.  <u>See</u> FTR at 10:17:27-10:17:48 (Quintero).  The Court asked why Scull had not done anything to extend the deadline.  <u>See</u> FTR at 10:17:52-10:18:18 (Court).  Scull replied that MTC had communicated to him that it contracted all medical care to PNA and that PNA had not yet answered at the time of the deadline.  <u>See</u> FTR at 10:18:18-10:18:26 (Quintero).  Scull asserted that he did not realize that MTC might also be responsible for getting the detainees medical care.  <u>See</u> FTR at 10:18:36-10:18:44 (Quintero).  The Court asked MTC whether it made a blanket statement to Scull that PNA was responsible for all medical care.  <u>See</u> FTR at 10:19:55-10:20:13 (Court).  MTC replied that it made such a statement and that its statement is true.  <u>See</u> FTR at 10:20:14-10:20:44 (Wihl).  MTC asserted that it provides transport officers to drive detainees off-site for medical care and to maintain custody of the detainees, but that it does not provide medical care.  <u>See</u> FTR at 10:20:44-10:20:54 (Wihl).  The Court asked whether the issue is whether MTC should have driven Scull off-site to receive medical care.  <u>See</u> FTR at 10:20:54-10:21:06 (Court).  MTC responded that MTC is responsible only for transportation.  <u>See</u> FTR at 10:21:13-10:21:44 (Wihl).

In closing, PNA asserted that, if the deadline for Scull to name experts against PNA is reset, then PNA's proposed deadline extensions for expert witness disclosures might not be appropriate. See FTR at 10:23:03-10:23:23 (Padilla).  PNA represented that an extension would not effect any other deadlines.  See FTR at 10:23:58-10:24:17 (Court, Padilla).

### RELEVANT LAW REGARDING EXTENSIONS OF TIME

Rule 6(b) provides:

(b)    **Extending Time.**

> (1)    **In General.** When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> > (A)    with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> >
> > (B)    on motion made after the time has expired if the party failed to act because of excusable neglect.
>
> (2)    **Exceptions.** A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).

Fed. R. Civ. P. 6(b).  Good cause is not a particularly demanding requirement.  See United States v. Portillo-Quezada, Nos. 03-20051, 08-2295, 2010 WL 396309, at *1 (D. Kan. Jan. 27, 2010)(finding good cause where an attorney argued that he "needs additional time to contact a witness for the Government at the trial of this case who may recant or change her testimony in material respects. Completion of research and drafting of the memorandum in support is also needed"); Weingarten v. Optima Commc'n Sys., Inc., 544 F.Supp.2d 193, 196 n.1 (S.D.N.Y. 2008)("Under Rule 6(b)(1)(A) . . . the court may, for good cause, extend the time to move if a request is made before the original time period expires.").

On the other hand, "a finding of excusable neglect under Rule 6(b)[(1)(B)] requires both

a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period." In re Four Seasons Sec. Laws Litig., 493 F.2d 1288, 1290 (10th Cir.1974). See Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)("[S]ome showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required.")(quoting Winters v. Teledyne Movible Offshore, Inc., 776 F.2d 1304, 1305 (5th Cir. 1985)).  "[I]t is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)." Quigley v. Rosenthal, 427 F.3d 1232, 1238 (10th Cir. 2005).

In determining whether a movant has shown excusable neglect, a court should consider the circumstances, including: (i) the danger of prejudice to the opposing party; (ii) the length of the delay and its potential impact on the judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant;  and (iv) whether the movant acted in good faith.  See Schupper v. Edie, 193 F.App'x 744, 746 (10th Cir. 2006)(unpublished)(citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 395 (1993)(stating factors in the context of Bankruptcy Rule 9006(b)); Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1494 (10th Cir.1995)(applying the Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. excusable neglect factors to the rule 6(b) context)).  The United States Court of Appeals for the Tenth Circuit has stated that the reason for delay is an important, if not the most important, factor in this analysis.  See Hamilton v. Water Whole Int'l Corp., 302 F.App'x 789, 798 (10th Cir. 2008)(unpublished)(citing United States v. Torres, 372 F.3d 1159, 1163 (10th Cir.  2004)(analyzing the excusable neglect standard in the context of Federal Rule of Appellate Procedure 4(b)(4), where the party filed an untimely notice of appeal)).

## LAW REGARDING MODIFICATION OF SCHEDULING ORDERS

"The District Court has wide discretion in its regulation of pretrial matters." Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990). Scheduling orders, however, "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Accord Street v. Curry Bd. of Cnty. Comm'rs, No. 06-0776, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning, J.). The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

The Tenth Circuit has held that the concepts of good cause, excusable neglect, and diligence are related. "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Street v. Curry Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *6. "The Tenth Circuit . . . has recognized the interrelation between 'excusable neglect' and 'good cause.'" Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(citing In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996)). In In re Kirkland, the Tenth Circuit dealt with the definition of "good cause" in the context of rule 4(j), and noted:

> [W]ithout attempting a rigid or all-encompassing definition of good cause, it would appear to require <u>at least as much</u> as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified' is normally required.

86 F.3d at 175 (emphasis in original)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir.1987))(internal quotation marks omitted). The Tenth Circuit explained that Putnam v. Morris

"thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"   In re Kirkland, 86 F.3d at 175.

Other district courts within the Tenth Circuit have held that "the good cause standard primarily considers the diligence of the party . . . [.] The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines. Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. at 301 (alteration in original)(internal quotation marks omitted). In the United States District Court for the District of Utah, the Honorable Dale A. Kimball, United States District Judge, found "good cause" existed to amend the court's scheduling order when the court decided to permit the plaintiff's counsel to withdraw as counsel. Kee v. Fifth Third Bank, No. 2:06-cv-00602-DAK-PMW, 2008 WL 183384, at *1 (Jan. 17, 2008 D. Utah). Judge Kimball reasoned: "[I]n light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order." Kee v. Fifth Third Bank, 2008 WL 183384, at *1.

## ANALYSIS

The Court will grant PNA's request to extend the expert disclosure deadlines and the Motion to Extend. The Court will also extend Scull's deadline to name expert witnesses against PNA, because PNA entered the case after Scull's deadline to name expert witnesses had passed. The Court will not, however, extend Scull's deadlines with respect to MTC, because Scull negligently allowed his deadline to pass without seeking an extension.

## I.   THE COURT WILL EXTEND PNA'S DEADLINES FOR DISCLOSING EXPERT WITNESSES.

The Court will grant the Motion to Extend. PNA entered the case after the initial deadline

to name expert witnesses had passed.  Additionally, neither Scull nor MTC are opposed to extending PNA's deadlines.  PNA filed its Answer in a timely manner after waiving service on December 5, 2012.  PNA had not entered the case at the time of any previous scheduling conferences or when the Court entered the Amended Scheduling Order.  Accordingly, PNA was not negligent for failing to meet the deadlines for expert disclosures in the Amended Scheduling Order and timely filed its Motion to Extend.  The Court extends PNA's deadline, because it had not yet entered the case when the Amended Scheduling Order was entered, it had only recently become part of the case when the discovery deadline passed, and it acted diligently to request an extension before the deadline expired.

**II.    THE COURT WILL EXTEND SCULL'S DEADLINE TO IDENTIFY EXPERT WITNESSES AND TO PRODUCE EXPERT REPORTS AGAINST PNA.**

The Court will grant Scull an extension to identify expert witnesses against PNA.  The Court will not extend Scull's deadline to identify expert witnesses and to produce expert reports against MTC.  Scull's deadline to name expert witnesses against MTC passed on January 3, 2012, and Scull did not do anything to extend the deadline and did not name expert witnesses.  While PNA had yet to enter the case, Scull had ample opportunity to request an extension to name experts against MTC.  His failure to do so is not excusable neglect.  Scull did not put forth a diligent effort before the deadline had passed to discover expert witnesses to testify against MTC or to request an extension.

**A.    SCULL HAS NOT SHOWN EXCUSABLE NEGLECT NOR WAS HE DILIGENT IN HIS EFFORTS TO MEET THE DEADLINE TO NAME EXPERT WITNESSES AGAINST MTC.**

To determine whether a party has shown excusable neglect, the Court should consider: (i) the danger of prejudice to the opposing party; (ii) the length of the delay and its potential impact

on the judicial proceedings; (iii) the reason for the delay, including whether it was within the movant's reasonable control;  and (iv) whether the movant acted in good faith.  See Schupper v. Edie, 193 F.App'x at 746 (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 395).  Scull's failure to request an extension before his existing deadline was not because of excusable neglect. The Court finds that the reason for the delay was within Scull's reasonable control and is attributed to Scull's inadvertence.

Scull filed his Amended Complaint on November 1, 2011.  See Doc. 36.  In his Amended Complaint, Scull indicated that "MTC and/or PNA" was responsible for his lack of medical care while at the facility.  Amended Complaint at 2-3.  Scull's Amended Complaint indicates that, on November 1, 2011, Scull did not know whether his lack of medical care was attributable to MTC, PNA, or both.  On December 5, 2011, PNA filed its Waiver of Service which acknowledged the sixty day period, beginning on December 2, 2012, in which it could file an answer.   See Fed. R. Civ. P. 4(d)(3) ("[A] defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent -- or 90 days after it was sent to the defendant outside any judicial district of the United States.").  While PNA did not file its Answer until January 11, 2012 -- eight days after Scull's deadline to disclose witnesses had passed -- Scull should have known that, under rule 4(d)(3), PNA could file an answer after his deadline to name expert witnesses had passed and before Scull could reasonably determine whether an expert for either MTC or PNA was necessary.  Scull's Amended Complaint indicates that, before his January 3, 2012, deadline he had yet to determine who was responsible for his lack of medical care.  Scull should have known, because this issue was unresolved, that he may need to name an expert witness against MTC.  Even though Scull and MTC agreed to postpone depositions until after PNA entered the case, Scull should not have disregarded the Court's expert disclosure

deadline without taking further steps to protect his ability to name experts against MTC.  If Scull was waiting until PNA entered the case to name expert witnesses against MTC, his failure to request an extension resulted from inadvertence and oversight of the Court's deadline, which does not constitute excusable neglect.   See Davidson v. Keenan, 740 F.2d 129, 132 (2d Cir. 1984)("Counsel's failure to request extension of time prior to deadline where it was clear that they would not be able to obtain necessary affidavits on time resulted from inadvertence and oversight, which does not constitute excusable neglect.").  Scull does not argue that he was unable to comply with the relevant deadlines.  Rather, Scull seeks relief from his own disregard for the deadline. Despite his knowledge that PNA had yet to enter the case, Scull chose to allow the deadline to pass without naming expert witnesses against MTC.  Because Scull was aware of this deadline and knew that he risked allowing it to expire; he should have requested an extension.  See Mann v. Fernandez, 615 F.Supp.2d 1277, 1290 (D.N.M. 2009)(Browning, J.)("Here, however, Mann is not seeking relief from an inability to comply with the relevant deadlines or even with relief from neglect. Instead, he is seeking relief from a deliberate choice of his counsel that, because it is deliberate, must be imputed to Mann as well.").  Scull simply disregarded the Amended Scheduling Order's deadline to name expert witnesses.  Accordingly, the Court will not extend any deadlines with respect to MTC.

### B.   SCULL HAS SHOWN EXCUSABLE NEGLECT WITH REGARD TO NAMING EXPERT WITNESSES AGAINST PNA.

"A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P.  16(b)(4).  While Scull was aware of the new deadlines in the Amended Scheduling Order, PNA had not yet filed an answer to Scull's Amended Complaint, when the expert disclosure deadline passed.  Not having an expert in a case is a high price to pay for missing a deadline that

was arguably unrealistic when it was set.  See Walker v. THI of N.M. at Hobbs Ctr., 262 F.R.D. 599 605 (D.N.M. Oct. 8, 2009)(Browning, J.)("Not having an expert in a case of this nature is a high price to pay for missing a deadline that, arguably, was unrealistic when it was set at the end of May, because of the need for Walker to have surgery. . . ."). The Amended Scheduling Order named only Scull and MTC as the parties, and did not mention PNA.  See Amended Scheduling Order at 1.  It was not unreasonable for Scull to expect a new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had with MTC.  If Scull was negligent in assuming a new deadline to name expert witnesses against PNA, it was excusable because Scull could not reasonably expect to determine what experts might be necessary against PNA, when PNA had not yet filed its Answer.  Additionally, at the hearing, PNA asserted that it understood that Scull may need time to evaluate the need for expert witnesses, because PNA had recently entered the case and was not opposed to granting Scull an extension.  See FTR at 10:04:19-10:04:33 (Padilla).  The Court concludes that Scull has shown good cause to extend his deadline to name expert witnesses against PNA.

        **IT IS ORDERED** that Defendant PNA's Partially Opposed Motion to Extend Deadlines in Scheduling Order, filed January 18, 2012 (Doc.  50), is granted.  The Court will extend the deadline to disclose expert witnesses for Defendant PNA of Texas, I, Ltd.  ("PNA").  Plaintiff Oscar F. Scull's request for an extension of his deadline to identify experts against PNA is granted. The Court will not, however, extend Scull's deadlines with respect to Defendant Management and Training Corporation.  The Court makes the following changes to the Amended Scheduling Order, filed November 14, 2011 (Doc. 39):

1.      Scull's deadline to disclose expert witnesses against PNA is May 16, 2012;

2.      PNA's deadline to disclose expert witnesses is May 23, 2012;

3.      the discovery deadline is moved from February 29, 2012 to May 29, 2012;

4.      the deadline for motions relating to discovery is moved from March 20, 2012 to June 20, 2012;

5.      the deadline for Pre-trial motions, other than discovery, is moved from March 30, 2012 to June 29, 2012;

6.      the Motions Hearing currently scheduled for May 9, 2012 is rescheduled August 7, 2012 at 1:30 p.m.;

7.      the deadline for the Parties' list of all fact witnesses is moved from May 10, 2012 to August 10, 2012;

8.      the deadline for Scull to forward the Pretrial Order to Defendants is moved from May 22, 2012 to August 16, 2012;

9.      the deadline for Defendant to forward Pretrial Order to the Court is moved from May 29, 2012 to August 23, 2012;

10.     the Pretrial Conference currently scheduled for May 30, 2012 is rescheduled for August 24, 2012;

11.     the Jury Selection/Trial is rescheduled on the Court's trailing docket commencing September 17, 2012.


_____
UNITED STATES DISTRICT JUDGE



Counsel:

Connie Quintero
Scherr & Legate, PLLC
El Paso, Texas

        *Attorneys for the Plaintiff*

-16-

Kurt Wihl
Christina Muscarella Gooch
Keleher & McLeod, P.A.
Albuquerque, New Mexico

*Attorneys for Defendant Management and Training Corporation*

Agnes F. Padilla
Michael Scott Owen
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant PNA of Texas I, Ltd.*