## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

OSCAR F. SCULL,

      Plaintiff,

vs.                                        No. CIV 11-0207 JB/RHS

MANAGEMENT & TRAINING CORPORATION,
and PNA OF TEXAS I, LTD.,

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Compel Management & Training Corporation to Fully Respond to Discovery, filed March 29, 2012 (Doc. 71)("Motion to Compel"). The Court held a hearing on May 14, 2012. The primary issues are: (i) whether Defendant Management & Training Corporation ("MTC") has withheld documents which it should have produced in discovery; and (ii) whether some of the requests in the Motion to Compel are premature. The Court will grant in part and deny in part the Motion to Compel. The Court will order that MTC produce documents related to: (i) monthly inspections for July, August, and September 2009; (ii) work orders for any maintenance done in Unit B; and (iii) fire, safety, and sanitation inspections for three months before the incident. The Court will deny without prejudice to subsequent renewal the requests related to: (i) visitation logs for three months before the incident; (ii) supervisor reports for Unit B-4; (iii) policy and procedures for the work order procedure program; (iv) MTC's audit reports on Defendant PNA of Texas I, LTD's ("PNA Texas") services; (v) the Immigration and Customs Enforcement ("ICE") standards in effect during Plaintiff Oscar F. Scull's incarceration; and (vi) Scull's visitation logs.

## PROCEDURAL BACKGROUND

On January 11, 2011, Scull filed a complaint in the Third Judicial District Court, County of Otero, State of New Mexico.  See Plaintiffs' [sic] Original Complaint (dated January 11, 2011), filed March 8, 2011 (Doc. 1-1)("Complaint").  On March 8, 2011, MTC removed the action to the United States District Court for the District of New Mexico, pursuant to 28 U.S.C. §§ 1441 and 1446.  See Defendant's Notice of Removal at 1, filed March 8, 2011 (Doc. 1).  The Complaint alleges that, on October 14, 2009, while Scull was a detainee at MTC's facility, the Otero County Processing Center ("OCPC") in New Mexico, he injured his arm when he slipped and fell.  See Complaint ¶ 3 at 1. Scull alleges negligence, civil-rights violations, and premises-liability claims against MTC.  See Complaint ¶¶ 12-15, at 2-5.  On November 1, 2011, Scull filed an amended complaint naming PNA Texas as a defendant and asserting three counts of negligence against it.  See Plaintiff's First Amended Complaint ¶¶ 13-23, at 3-7, filed November 1, 2011 (Doc. 36)("Amended Complaint").

On March 29, 2012, Scull filed his Motion to Compel.  See Doc. 71.  Scull asserts that MTC responded to his Interrogatories and Requests for Production ("RFP") with general objections. Motion to Compel at 3 (citing Defendant Management & Training Corporation's Answers and Objections to Plaintiff's First Set of Interrogatories and First Request for Production of Documents and Things at 14-25, filed March 29, 2012 (Doc. 71)("Objections")).  He argues that general objections are insufficient to preserve an argument and that the Court should overrule the Objections.  See Motion to Compel at 3.  He contends that the "mere statement by a party that a discovery request is 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory."  Motion to Compel at 4 (citing Cardenas v. Dorel Juvenile Grp., Inc., 232 F.R.D. 377, 381 (D. Kan. 2005)).  Scull asserts that, because MTC has made general objections, it is "difficult to know whether Defendants are withholding information in

response to discovery that is partially answered and then objected to." Motion to Compel at 4. He argues that, under rule 26 of the Federal Rules of Civil Procedure, discovery is permitted into all matters relevant to a claim or defense, and such information need not be admissible for purposes of trial, so long as discovery is reasonably calculated to lead to the discovery of admissible evidence. See Motion to Compel at 5 (citing Fed. R. Civ. P. 26(b)(1)).

RFP No. 11 seeks the "[a]rrest records, statements, files and addresses and phone numbers of all cell mates of Plaintiff within one (1) week of his injury." Motion to Compel at 5. MTC objects, because Scull seeks the private, personal information of detainees unrelated to Scull and because it is unclear how such information will lead to the discovery of admissible evidence. See Motion to Compel at 5-6. In response, Scull limited his request to the inmates' names and last known contact information. See Motion to Compel at 6. RFP No. 12 seeks information regarding other injury claims, including supporting medical information, filed against MTC. See Motion to Compel at 6. MTC objects, because the RFP is vague, overbroad, and unduly burdensome, and seeks highly confidential information. See Motion to Compel at 6-7. He argues that he is entitled to any information regarding claims other inmates have made that the facility denied them medical care. See Motion to Compel at 7. RFP No. 13 seeks information regarding any rules, regulations, and procedure for medical care and assessing serious health conditions. See Motion to Compel at 7. MTC objects that the RFP is: (i) vague, because it does not specify scope; (ii) overbroad, because it does not specify a time frame; and (iii) unduly burdensome, because it seeks information that is neither relevant nor reasonably calculated to lead to discoverable evidence. See Motion to Compel at 7. He contends that Warden Terry Hassel referenced several of the documents sought in his deposition, and that MTC has failed to identify those documents or produce them. See Motion to Compel at 8. RFP No. 22 seeks all claim files, investigative reports, letters, notices, lawsuits, and

-3-

other documents concerning claims for which MTC denied medical treatment.  See Motion to Compel at 8.  Scull represents that he and MTC make the same arguments with respect to RFP No. 22 as they did with regard to RFP Nos. 12 and 13.  See Motion to Compel at 8.  RFP No. 29 seeks the following information with regard to Scull: (i) booking sheet or logs; (ii) in and out logs; (iii) releasing logs; (iv) transfer logs; (v) bag and baggage lots; (vi) daily floor reports; (vii) inventory sheet; and (viii) intake sheets or logs.  See Motion to Compel at 8.  MTC objects that it has provided all responsive documents, but Scull argues that the following documents have not been produced: (i) the in and out logs; (ii) releasing logs; (iii) transfer logs; and (iv) daily floor reports.  See Motion to Compel at 9.

RFP No. 34 seeks all maintenance reports for the air conditioner located above the area where Scull slipped and fell.  See Motion to Compel at 9.  MTC objects that this request is vague and overly broad, and that there is no air conditioner above the location where he fell.  See Motion to Compel at 9.  Scull argues that MTC's assertion that there was no air conditioner is not true and that he has located independent witnesses who can confirm that there was water on the floor coming from the roof.  See Motion to Compel at 9.  MTC contends that he has changed the scope of his discovery and that, if he seeks information concerning air conditioner vents, he needs to serve discovery seeking that information.  See Motion to Compel at 10.  For RFP Nos. 36, 37, and 38, all of which seek information regarding maintenance records, the parties refer to their responses to RFP No. 34.  See Motion to Compel at 11-12.

On April 16, 2012, MTC filed Management & Training Corporation's Response in Opposition to Plaintiff's Motion to Compel.  See Doc. 76 ("Response").  MTC asserts that it "has objected to Plaintiff's attempts to expand the scope of discovery well beyond the scope of the issues in this case."  Response at 2.  With respect to RFP No. 11, MTC argues that, although it provided

-4-

other inmates' names and last known contact information in <u>Hernandez-Rios v. MTC</u>, No. 09-0615, this case is distinguishable.  <u>See</u> Response at 2.  It contends that the facility involved in that case housed prisoners who had been convicted of a crime, whereas OCPC detainees are released to ICE, who determines where detainees are sent.  Response at 2.  It argues that it does not have forwarding information for released detainees and that any intake information it has "bears little, if any, connection to where the detainees may have gone after they left OCPC."  Response at 2.  Regarding RFP No. 12, MTC asserts that the request for information on denial of medical-care claims is overbroad and burdensome.  <u>See</u> Response at 3.  It further asserts that "the requested information would require MTC to produce confidential medical information of other detainees without first obtaining their permission to release such information."  Response at 3.  It argues that MTC operates many facilities in various states and countries, that PNA Texas provides medical care at OCPC, that Scull must first obtain consent from other inmates and detainees, and that Scull never clarified whether he was seeking only complaints filed in court.  <u>See</u> Response at 3.  MTC contends that the "chief flaw" in RFP No. 13 is that "it is neither limited in time nor to the facility at issue in this case."  Response at 4.  It asserts that it has produced documents responsive to this request and will voluntarily produce additional documents that pertain to only OCPC.  <u>See</u> Response at 4.  It contends that RFP No. 22 seeks investigative reports and judgments concerning denial of medical care at "your facility," which MTC interprets to mean "any facility that MTC operates."  Response at 4.  It argues that there are no responsive documents for OCPC and that it objects to the request to the extent that it refers to all MTC operated facilities.  <u>See</u> Response at 4.  MTC asserts that it has fully complied with RFP No. 29 and that, if it discovers other responsive documents, it will produce them.  <u>See</u> Response at 4.  With respect to RFP No. 34, MTC states that it based its understanding of this request on the allegations in the Amended Complaint -- that Scull fell in the shower area.

<u>See</u> Response at 5.  It asserts that there are no air conditioners or vents in that area, but that, as an accommodation, it will produce records concerning the roof, the air conditioner, and the vents in House Unit B-4.  <u>See</u> Response at 5.  It contends that it complied with RFP Nos. 36 and 38, based on the allegations in the Amended Complaint.  <u>See</u> Response at 5.  It argues that RFP 37 is "nonsensical," because MTC has no management contracts or maintenance agreements concerning Housing Unit B-4.  Response at 5.

On May 8, 2012, Scull filed his Plaintiff's Reply to Management & Training Corporation's Response in Opposition to Plaintiff's Motion to Compel.  <u>See</u> Doc. 97 ("Reply").  Scull asserts that, since the Response was filed, the "parties have exchanged additional documents regarding Plaintiff's Motion to Compel."  Reply at 1.  He argues, however, that not all responsive documents have been produced.  <u>See</u> Reply at 1.  Scull contends that the following documents have not been produced: (i) monthly inspections for July, August, and September 2009; (ii) work orders for any maintenance done in Unit B; (iii) fire safety and sanitation inspections for three months before the incident; (iv) visitation logs for three months before the incident; (v) supervisor reports for Unit B-4; (vi) "[p]olicy and procedures for the work order procedure program which Warden Terry Hassel testified was the program used in keeping track of the facilities work orders"; (vii) MTC's audit reports on PNA Texas services; (viii) the ICE standards in effect during Scull's incarceration; and (ix) Scull's visitation logs.  Reply at 1-3.  Scull argues that he has a "right to have the matter decided on the best available evidence, and that includes the abovementioned documentation which Defendant refuses to produce or produces unilaterally picked documents."  Reply at 3.

On May 14, 2012, the Court held a hearing.  At the hearing, the Court proposed that it work off of the Reply brief, because it seemed to be the most accurate distillation of what was still in dispute.  <u>See</u> Federal Digital Tape Recorder at 3:03:01-03:18 (May 14, 2012)(Court)("FTR").  Scull

asserted that there has been deposition testimony that every month MTC has inspections of the facility and that MTC had provided the inspection reports for the time period after the October 14, 2009 incident. See FTR at 3:04:00-04:23 (Quintero).  He argued that the monthly inspections for July, August, and September, the three months before the incident, would be useful in locating admissible evidence.  See FTR at 3:04:24-05:04 (Quintero).  MTC contended that it had supplemented its response to the requests for discovery to state that it had been unable to locate the monthly inspection reports for July, August, and September 2009.  See FTR at 3:05:17-05:32 (Gooch).  It represented, however, that the date of the report is the date of the report's issuance, and reflects the results of the inspection that took place the previous month.  See FTR at 3:05:32-05:41 (Gooch).  MTC then stated that, because it has supplemented its discovery response to inform Scull that it cannot locate those reports, it was not sure what more it could do at this time.  See FTR at 3:06:05-06:13 (Gooch).  The Court stated that it would be inclined to say that, if these reports are found, they should be turned over, because the request is reasonable.  See FTR at 3:06:25-06:35 (Court).  Scull agreed that this proposal was acceptable.  See FTR at 3:06:45-06:50 (Quintero).  The Court also stated that it would overrule the general objections to the request for production.  See FTR at 3:07:39-08:2 (Court).

With regard to the work orders for any maintenance done in Unit B, MTC asserted that the alleged fall occurred in Unit B-4 and that it is unclear how any maintenance done in Unit B, generally, is relevant to the incident.  See FTR at 3:08:20-08:31 (Gooch).  Scull argued that one of the lieutenants that he had deposed testified that she had done a large number of work orders for the unit and that MTC has produced only two.  See FTR at 3:08:35-08:56 (Quintero).  He asserted that, although there were separate rooms within the larger unit, the building in which he was housed is classified as Unit B.  See FTR at 3:09:03-09:24 (Quintero).  He contended that the only two work

orders that MTC had produced were from two to three months after the incident, and that, because Unit B was one structure and had one roof, any work orders related to the structure, in particular related to the roof, were relevant to the case.  See FTR at 3:09:25-09:58 (Quintero).  MTC argued that the only area relevant for this lawsuit is the area in which Scull alleges that he fell and that the condition of any other areas of Unit B are immaterial.  See FTR at 3:09:59-10:10 (Gooch).  The Court stated that it would require work orders for Unit B for three months before and after the incident.  See FTR at 3:10:18-11:12 (Court, Quintero).  MTC clarified that the two work orders it had disclosed were only with respect to Unit B-4.  See FTR at 3:11:34-11:38 (Court, Gooch).  The Court stated that it would order MTC to turn over work orders from three months before and after the incident for all of Unit B.  See FTR at 3:11:46-11:54 (Court).

The Court then asked whether MTC had further supplemented its responses regarding the fire safety and sanitation inspections.  See FTR at 3:11:56-12:04 (Court).  MTC asserted that this request was new, and that it was unsure what reports it had or to what request for production the documents were responsive.  See FTR at 3:12:05-12:16 (Gooch).  Scull argued that, when he deposed Hassel, the warden testified that MTC conducts fire safety inspections, which include examining the sprinklers and other systems, and represented that Hassel likely has the reports in his possession, because they are turned into him.  See FTR at 3:12:37-13:10 (Quintero).  He asked that the Court make the same ruling as with respect to the Unit B work orders, and order MTC to produce the Unit B fire, safety, and sanitation inspections for three months before and after the incident.  See FTR at 3:13:22-13:44 (Quintero).  The Court asked if MTC had any objection to the Court entering that order.  See FTR at 3:13:45-13:49 (Court). MTC responded that it was unsure to what request for production this information was responsive and that, if this information was something uncovered during a deposition, the request was unripe and a supplementary request for

production was more appropriate.  See FTR at 3:13:50-14:11 (Gooch).  Scull contended that this information was responsive to: (i) RFP No. 34, which seeks all maintenance records for the air conditioner in the area where he fell, because Hassel testified that the air conditioners were inspected as part of the fire, safety, and sanitation inspections; (ii) RFP No. 36, which seeks all maintenance records and reports concerning the location that is the subject of the suit; and (iii) RFP No. 38, which seeks all estimates, work orders, invoices, contracts, inspection reports, and pictures of the incident's location.  See FTR at 3:15:25-16:09 (Quintero).  MTC's attorney, Christina Gooch, stated that she was not at Hassel's deposition and was unaware that he had testified that the air conditioners were part of the fire, safety, and sanitation inspections.  See FTR at 3:16:24-16:44 (Gooch).  The Court stated that, because Scull was seeking only the inspection reports for the three months before the incident, those were the only reports that the Court would require MTC to produce.  See FTR at 3:16:46-17:11 (Court, Quintero).

MTC argued that the remaining items discussed in the Reply -- the visitation logs for three months before the incident, the supervisor reports for Unit B-4, the policies and procedures for the work order procedure program, the MTC audit reports on PNA Texas' services, the ICE standards in effect during Scull's incarceration, and the visitation logs for Scull -- are subject to the outstanding discovery for which Scull had given MTC an extension and which were not ripe for a motion to compel.  See FTR at 3:17:22-17:54 (Gooch).  The Court then asked Scull whether an acceptable solution would be to deny the motion with respect to the remaining items without prejudice to him renewing his motion should the parties be unable to work out any differences.  See FTR at 3:18:02-18:19 (Court).  Scull argued that he had sought these documents in other requests for production, but that MTC had asked him to be more specific, and so Scull made a second request.  See FTR at 3:19:09-19:30 (Quintero).  Scull agreed, however, that it would be

appropriate for the Court to deny the Motion to Compel with respect to these documents so long as it was without prejudice to him bringing these matters back before the Court.  See FTR at 3:20:04-20:11 (Quintero).

## RELEVANT LAW REGARDING DISCOVERY

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Federal courts have held that the scope of discovery under rule 26 is broad.  See Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947).  As a result, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case."  Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 649-650 (D.N.M. 2007)(Browning, J.)(internal quotation marks omitted).

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." McGee v. Hayes, 43 F.App'x 214, 217 (10th Cir. 2002)(unpublished).  See Tottenham v. Trans World Gaming Corp., No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. 2002)(Knapp, J.)("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (internal quotation marks omitted)); Hardrick v.

Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests" (internal quotation marks omitted)). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. 1998). Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2. Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal quotation marks omitted).

Rule 26, which once stated that a party may obtain discovery on any matter "relevant to the subject matter," Fed. R. Civ. P. 26(b)(1) (1999), was amended in 2000 to state that the material must be "relevant to the claim or defense of any party," Fed. R. Civ. P. 26(b)(1). Under the 2000 amendment, however, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). The Advisory Committee explained that the amendment was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (stating that the amendment was made with the intent "that the parties and the

court focus on the actual claims and defenses involved in the action"). The Advisory Committee further explained:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses, and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.

Rule 34 requires a party on whom a request for production is served to "state . . . that inspection and related activities will be permitted as requested, unless the request is objected to . . . . If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34(b). Rule 37 provides enforcement mechanisms for rule 34. According to rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond. See Fed. R. Civ. P. 37(a)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).

## ANALYSIS

The Court will grant in part and deny in part the Motion to Compel. The Court will order that MTC produce documents related to: (i) monthly inspections for July, August, and September 2009; (ii) work orders for any maintenance done in Unit B; and (iii) fire, safety, and sanitation inspections for three months before the incident. See Reply at 1-2. The Court will deny without prejudice to subsequent renewal the requests related to: (i) visitation logs for three months before the incident; (ii) supervisor reports for Unit B-4; (iii) "[p]olicy and procedures for the work order procedure program which Warden Terry Hassel testified was the program used in keeping track of

the facilities work orders"; (iv) MTC's audit reports on PNA Texas' services; (viii) the ICE

standards in effect during Scull's incarceration; and (v) Scull's visitation logs.  Reply at 2-3.

## I.      THE COURT WILL ORDER MTC TO PRODUCE THE MONTHLY INSPECTION REPORTS FOR JULY, AUGUST, AND SEPTEMBER 2009, IF THEY ARE LOCATED.

Scull asks that the Court order MTC to produce the monthly inspection reports for July,

August, and September 2009.  See Reply at 1.  At the hearing, MTC asserted that it has been unable

to locate those monthly inspection reports.  See FTR at 3:05:17-05:32 (Gooch).  The Court believes

that the request for these reports are "reasonably calculated to lead to the discovery of admissible

evidence."  Fed. R. Civ. P. 26(b)(1).  The Court cannot, however, order MTC to produce documents

which it does not possess.  See Walker v. THI of N.M. at Hobbs Ctr., No. 09-0060, 2010 WL

552661, at *11 (D.N.M. Feb. 8, 2010)(Browning, J.)("[T]he Court will not require THI of Hobbs

to produce documents it does not possess . . . .").  Because MTC has represented that it cannot locate

and does not possess the responsive documents that Scull seeks, the Court will not order it to

produce them.  The Court will order that, should MTC find these documents, it must produce them.

## II.     THE COURT WILL ORDER MTC TO PRODUCE ANY MAINTENANCE ORDERS FOR UNIT B FOR THREE MONTHS BEFORE AND THREE MONTHS AFTER OCTOBER 14, 2009.

Scull asks that the Court order MTC to produce the work orders for any maintenance or work

done in Unit B.  See Reply at 1.  He asserts that MTC produced work orders from December 4,

2009, and December 6, 2009, but that those work orders were limited to Unit B-4.  See Reply at 1.

He argues that, in her deposition, Lieutenant Melissa Sambrano stated that she "put in over 25 work

orders for Unit B4 alone."  Reply at 1-2.  MTC contended that only the work orders related to Unit

B-4, the area where Scull allegedly fell, is relevant to this suit.  See FTR at 3:09:59-10:10 (Gooch).

Rule 26 is not a difficult standard to satisfy.  Federal courts have held that discovery under

rule 26 should be broad and liberal.  See Gomez v. Martin Marietta Corp., 50 F.3d at 1520; Sanchez v. Matta, 229 F.R.D. at 654.  As a result, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case."  Anaya v. CBS Broad., Inc., 251 F.R.D. at 649-650.  Unit B is one structure, which OCPC has then subdivided into four smaller units.  See FTR at 3:09:25-09:58 (Quintero).  Scull alleges that he slipped in water that he believes came from an air conditioner in the ceiling.  See Amended Complaint ¶ 5, at 2.  Accordingly, work orders relating to the entirety of Unit B could lead to discoverable evidence, because all the subsections of Unit B share certain common structures, including the roof.  If there was a structural problem related to Unit B, it could lead to admissible evidence related to the liquid on which Scull alleges he slipped.  Scull's request is specific and limited in time to the three months before and three months after his fall.  The Court does not find this request overly burdensome and believes that this information could reasonably lead to other information that would be relevant to the issues raised.  The Court will therefore order MTC to produce work orders for Unit B for the three months before and after October 14, 2009.

## III.   THE COURT WILL ORDER MTC TO PRODUCE THE FIRE, SAFETY, AND SANITATION INSPECTION REPORTS FOR THE THREE MONTHS BEFORE SCULL'S FALL.

Scull represents that MTC produced the fire, safety, and sanitation inspections for September 2009, but refused to produce the inspections for the three months before the incident.  See Reply at 2.  At the hearing, Scull asserted that this information was responsive to: (i) RFP No. 34, which seeks all maintenance of the air conditioner in the area where he fell, because Hassel testified that the air conditioners were inspected as part of the fire, safety, and sanitation inspections; (ii) RFP No. 36, which seeks all maintenance records and reports concerning the location that is the subject of the suit; and (iii) RFP No. 38, which seeks all estimates, work orders, invoices, contracts, inspection

-14-

reports, and pictures of the site of the incident.  See FTR at 3:15:25-16:09 (Quintero).  Ms. Gooch

stated that, because she did not attend the Hassel's deposition, she was unaware that he had testified

that the air conditioners were part of the fire, safety, and sanitation inspections, and she did not raise

any further objection to producing this information.  See FTR at 3:16:24-16:44 (Gooch).

    The Court finds that the fire, safety, and sanitation inspection reports could lead to the

discovery of admissible evidence, because, in the course of the inspection, the air conditioner was

examined.  See Gomez v. Martin Marietta Corp., 50 F.3d at 1520; Sanchez v. Matta, 229 F.R.D. at

654.  After clarification at the hearing about to which RFPs these documents were responsive, MTC

raised no further arguments about producing such information.  Because Scull asks only for the fire,

safety, and sanitation inspection reports for the three months before his fall, the Court will require

MTC to produce the reports only for those three months.

## IV.    THE COURT WILL DENY THE REMAINING REQUESTS FOR DOCUMENTS LISTED IN THE MOTION TO COMPEL WITHOUT PREJUDICE TO SCULL RENEWING HIS MOTION.

    Before moving to compel discovery, a party must confer in good faith with the opposing

party to attempt to obtain the discovery without court action.  See Fed. R. Civ. P. 37(a).  The Court

has noted that, "[a]lthough the party seeking discovery must bring motions to compel within 20 days

of receiving timely objections, the rules also require the parties to attempt to make a good faith

effort to resolve discovery disputes before the moving party brings the motion."  Segarra v. Potter,

No. 02-1413, 2004 WL 3426438, at *3 (D.N.M. Apr. 5, 2004)(Browning, J.).  At the hearing, Scull

admitted that he had granted MTC an extension for the remaining items in its Motion to Compel and

that discovery was not yet due.  See FTR at 3:19:09-19:30 (Quintero).  Scull also agreed that it

would be appropriate for the Court to deny the Motion to Compel with respect to these documents

so long as it was without prejudice to him bringing these matters back before the Court.  See FTR

at 3:20:04-20:11 (Quintero).

Because discovery was not yet due, Scull had no reason to move the Court to compel MTC to produce these documents.  Furthermore, the parties have not yet conferred in good faith with respect to these documents to work out any differences they might have.  See Fed. R. Civ. P. 37(a).  With no discovery due at the time the Motion to Compel was filed, Scull cannot argue that MTC has withheld the requested documents.  It would, therefore, be premature for the Court to grant the Motion to Compel with respect to these documents.  Accordingly, the Court will deny the Motion to Compel with regard to the remaining items listed in the Motion to Compel, without prejudice to Scull raising these issues again should the parties to be unable to work through any differences.

**IT IS ORDERED** that the Plaintiff's Motion to Compel Management & Training Corporation to Fully Respond to Discovery, filed March 29, 2012 (Doc. 71), is granted in part and denied in part.  The Court will order that Defendant Management & Training Corporation produce documents related to: (i) monthly inspections for July, August, and September 2009; (ii) work orders for any maintenance done in Unit B; and (iii) fire, safety, and sanitation inspections for three months before the incident.  The Court will deny without prejudice to subsequent renewal the requests related to: (i) visitation logs for three months before the incident; (ii) supervisor reports for Unit B-4; (iii) policy and procedures for the work order procedure program; (iv) MTC's audit reports on Defendant PNA of Texas I, LTD's services; (viii) the Immigration and Customs Enforcement standards in effect during Plaintiff Oscar F. Scull's incarceration; and (v) Scull's visitation logs.

_____
UNITED STATES DISTRICT JUDGE

-16-

*Counsel:*

Connie Quintero
Scherr & Legate, PLLC
El Paso, Texas

      *Attorneys for the Plaintiff*

Kurt Wihl
Christina Muscarella Gooch
Keleher & McLeod, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendant Management and Training Corporation*

Agnes F. Padilla
Michael Scott Owen
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendant PNA of Texas I, Ltd.*